## ENDERS *v.* LAKE SHORE & M. S. R. Co.

(*Superior Court of Buffalo, General Term.*   December 3, 1888.)

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—NEGLIGENCE.

Deceased was driving a wagon on a dark and stormy night on a street crossed by three railway tracks. He crossed one about 40 feet from the others, and was signaled by a flag-man to stop. On each side of him was another wagon, and in behind him cars were being moved, and several engines were ringing bells, discharging steam, etc. He stopped until the train, which was slowly going west, backed past him on the nearest track, when one of the other teams crossed in safety, and he, following at once, was struck by a train on the third track, (defendant's road,) coming from the west, and killed. The evidence as to whether the flag-man signaled for defendant's train, or whether the bell was rung, was contradictory. The train approached at 8 or 10 miles an hour, the law allowing only a speed of 6 miles an hour. Deceased's view of the track in that direction was obstructed by a wagon with a high box, and by the train passing on the second track. *Held* sufficient evidence of negligence on the part of defendant to be submitted to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

It cannot be said on the facts, as a matter of law, that the negligence of deceased contributed to the accident, as, while it was his duty to look for an approaching train, it is doubtful whether he could have seen it, owing to the obstructions to his view in that direction.

Appeal from trial term.

Action by Mary Enders, administratrix of her deceased husband, to recover ·of the Lake Shore & Michigan Southern Railroad Company for the death of decedent, alleged to have been caused by defendant's negligence. There was a verdict and judgment for plaintiff, and defendant appeals.

*McMillan, Gluck & Pooley,* for appellant. *Fullerton, Becker & Hazel,* for respondent.

TITUS, J.   This is an appeal from a judgment entered on the verdict of a jury in favor of the plaintiff, and from an order denying a motion for a new trial. It appears from the evidence that on the 10th day of December, 1886, the plaintiff's intestate, while attempting to cross the tracks of the defendant's road on Louisiana street, in this city, was run over and killed by the

engine of the local passenger train, which leaves Buffalo about 5:30 o'clock
P. M.   It is claimed by the defendant's counsel that the verdict of the jury
should have been set aside on the grounds—*First*, that the negligence of the
deceased contributed to the accident; and, *second*, that there was no evidence
to submit to the jury on the question of the defendant's negligence.   Loui-
siana street runs north and south, and is crossed at right angles by the tracks
of the New York, Lake Erie & Western Railway Company, the New York
Central & Hudson River Railroad Company, and the Lake Shore & Michigan
Southern Railway Company.   The accident happened about half past 5 o'clock
in the evening.   It was a dark and misty night.   The deceased was driving
a one-horse lumber wagon, and, coming down Louisiana street from the north,
crossed the Erie tracks, and was signaled to stop by the flag-man on duty at
the crossing; the same flag-man being employed by the Central and Lake Shore
companies.   The place where he stopped was between the tracks of the Erie
and Central crossing, and was about 40 feet wide.   On his left and to the east
was a double team, and on his right and to the west was a double team, with a
high box-wagon, used for drawing grain or coal.   He was sitting on some
boards running lengthwise his wagon, facing the west.   An engine on the
Central track backed down west, across the street, towards the depot, with 5
sleeping coaches, making a train 340 feet long.   It was going at a slow rate
of speed,—as fast as a man could walk.   Cars were being switched on the
Erie tracks, in the rear of where these teams were standing.   Bells were ring-
ing, and three or four engines were in the immediate vicinity, making more
or less noise from the escaping steam.   After the cars on the Central track
had passed by, the team standing to the east of the deceased started up, and
crossed over in safety, and he followed close behind.   The train was go-
ing, according to the estimate of some of the witnesses, at the rate of from
eight to ten miles an hour, while the ordinances permitted a rate of speed of
but six miles per hour.   According to the testimony of the witness Deacon,
the gate-tender for the Erie Company, the deceased could not be seen from the
west side of the street, where the witness stood, by reason of the high box-
wagon which was on the westerly side of the street, and between him and
the wagon on which the deceased was seated.   The same witness says he saw
no signal given by the flag-man, of the Central train passed, to the teams stand-
ing on the north side of the track, of the approach of the Lake Shore train,
while the flag-man and other witnesses testified that signals were given to
them to remain where they were.   It is not disputed that the teams on the
south side of the Lake Shore track were notified of the approach of the Lake
Shore train, and did not attempt to cross.   This brief summary of the evi-
dence, it seems to me, does not, as a matter of law, charge the deceased with
negligence, but leaves the question in so much doubt and uncertainty that the
court could not have taken it from the jury.   I think it presents a fair ques-
tion of fact for the jury to determine, whether, under the circumstances, the
deceased used proper care, and acted as a prudent man, knowing the danger-
ous character of the crossing, would have done, taking into account all of his
surroundings.   It is claimed by the counsel for the defendant that if the de-
ceased had looked to the west, in the direction from which the Lake Shore
train was approaching, he could have seen it from the time it left Chicago
street, about 1,000 feet distant, up to a short distance of Louisiana street.   I
do not think the evidence necessarily sustains the claim.   In addition to the
fact that the Central cars were passing immediately in front of him, his vis-
ion in that direction was necessarily more or less obstructed by the high box-
wagon on his immediate right, and it is a fair inference from the evidence
that an unobstructed view could only be obtained from a point in rear of this
wagon.   In addition to this, according to the testimony of the defendant's
witness Allen, "a man would have to look considerably sharp to see" that
distance on such a night, and from seeing the head-light of the engine "it

would be impossible to tell which way it was moving." If the deceased had seen the engine at that distance, he might have very well supposed it was running at a lawful rate of speed, which would give him ample time, at that distance, to cross the track with perfect safety, before the train would reach the crossing. *Jetter* v. *Railroad Co.*, 2 Abb. Dec. 458 The facts in this case are somewhat similar to those in *Leonard* v. *Railroad Co.*, 42 N. Y. Super. Ct. 225; *Finklestein* v. *Railroad Co.*, 41 Hun, 34; and *McGovern* v *Railroad Co.*, 67 N. Y. 417,—where the court held that it was for the jury to say, whether, under the circumstances, the party was guilty of contributory negligence. This is not a case where it can be said as matter of law that the plaintiff saw the train, and attempted to cross the track, and took the risk upon himself, as was the case in *Smith* v. *Railroad Co.*, 19 Wkly. Dig. 230. In that case it was admitted that the deceased saw the train coming, and attempted to cross before it. There was no noise or confusion to distract his attention, but, after seeing the train, he deliberately drove onto the track; and the court held that there was no question for the jury to pass upon.

On the second proposition I think the trial judge properly disposed of the question in submitting the negligence of the defendant to the jury for their determination. Some question is raised by the evidence as to whether the bell was rung. Some of the witnesses who were in a position to hear say it was not. And whether the flag-man did all he should have done to warn the teams on the north side of the crossing, after the Central train had passed, of the approach of the Lake Shore train, and whether the defendant's train was going at an excessive and dangerous rate of speed, considering the darkness of the night, and character of the crossings, through a busy part of the city, were questions of fact for the jury, under proper instructions from the court, to determine; and I do not think error was committed in submitting them to the jury. I have carefully examined the cases cited by the defendant's counsel in his brief, and they are in harmony with the well-established rule adopted in this state that, where there is any conflict in the evidence, or the question is not free from doubt, the negligence of a party must be submitted to the jury. *Bernhard* v. *Railroad Co.*, 1 Abb. Dec. 131; *Haycroft* v. *Railroad Co.*, 64 N. Y. 636; *Hart* v. *Bridge Co.*, 80 N. Y. 622. The question certainly was not free from doubt, the evidence was by no means undisputed, and the jury were fairly warranted in finding with the plaintiff in both propositions. I have not lost sight of the rule that a person must use his senses, must listen and look for the approach of trains, and must act like a prudent man, aware of the danger which confronts him. The jury were fully instructed in their duties by the court. They were told that before the plaintiff could recover she "must satisfy them by evidence that the deceased was not guilty of any negligence which contributed to his injury; that in all things he exercised proper care, and used his senses, and the means within his power, to prevent coming in contact with this train.  *  *  *  He is bound to look and listen for an approaching train. He is bound to look both ways for it; to exercise all his faculties to keep from danger or injury to himself." This is a vigorous statement of the law relative to the duty of a party seeking to recover from the negligent act of another, and the attention of the jury was called with directness to the question.

I have examined the exceptions taken by the defendant to the charge of the court, and refusals to charge as requested. Whether the signal of the flag-man was originally given on account of the approach of the Central train is not very material. It is not disputed that the flag-man gave a signal as the deceased approached the crossing, and that he stopped until it passed. The court called the attention of the jury to the testimony of the flag-man, in which it is stated that, after the Central train had passed, he signaled the deceased of the approach of the Lake Shore train, and to remain where they were, and whatever train the flag-man had in mind when he gave the signal cannot vary

the effect, or throw light upon the understanding of the deceased as to its meaning. It does not appear that a different signal is used by the Lake Shore road than is used upon the Central at crossings. Not knowing the signal was intended for a particular train, it could have had no influence upon the con· duct of the deceased. But one signal was given before the Central train crossed, and whether it was intended as the signal· of the approach of one or both trains, cannot, it seems to me, be very important. The other exceptions relate principally to the two questions already discussed, and require no further notice. The judgment and order appealed from should be affirmed, with costs.

BECKWITH, C. J., concurs. HATCH, J., did not sit.